UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x

WAJID KAHLIL AL-QADAFFI,

                             Plaintiff,

                -v-

THE CITY OF NEW YORK; New York City Police
Department Detective WILSON COLON (Shield No. 2933)
in his individual capacity; New York City Police Department
Officer MAURICIO THOMAS (Shield No. 26957), in his
individual capacity; New York City Police Department
Officer JOHN DOE (the name "John Doe" being fictitious,
as the true name, rank and shield number are not known to
plaintiff), in his individual capacity,

                           Defendants.

-------------------------------------------------------------------------x

**AMENDED COMPLAINT AND
DEMAND FOR A JURY
TRIAL**

Index No. 15-CV-_____

       Plaintiff WAJID KAHLIL AL-QADAFFI, through his attorney Robert M. Quackenbush

of Rankin & Taylor, PLLC, as and for his amended complaint, does hereby state and allege:

<u>**PRELIMINARY STATEMENT**</u>

1.   This is a civil rights action brought to vindicate plaintiff's rights under the First, Fourth, and

     Fourteenth Amendments of the Constitution of the United States, through the Civil Rights

     Act of 1871, *as amended*, codified as 42 U.S.C. § 1983, along with pendent claims under the

     laws of the State of New York.

2.   Plaintiff WAJID KAHLIL AL-QADAFFI, a devout Muslim and practicing member of the

     Nation of Islam, was involuntarily detained by the defendant-officers of the New York City

     Police Department ("NYPD") in clear retaliation for Mr. AL-QADAFFI filming police

     officers as they confronted and seized two young, Black men walking on a sidewalk in the

     Bronx.

3. Immediately prior to filming the encounter and the subsequent detention, Mr. AL-QADAFFI was proselytizing, as commanded by his religion, by handing out literature and DVDs promoting his faith to members of the public.

4. Due to the unlawful detention by the officer-defendants, Mr. AL-QADAFFI was forced to cease both filming the police and exercising his religious beliefs, in violation of his rights secured by the First Amendment. He was also not free to leave the area despite the fact that no reasonable officer could have believed there was reasonable suspicion or probable cause to detain Mr. AL-QADAFFI, in violation of Mr. AL-QADAFFI's rights under the Fourth Amendment and New York common law.

5. Accordingly, Mr. AL-QADAFFI seeks an award of compensatory and punitive damages and attorneys' fees.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3-4). This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of the First, Fourth, and Fourteenth Amendments to the Constitution of the United States.

7. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) in that Mr. AL-QADAFFI's claim arose in Bronx County, within the confines of this judicial district.

8. Consistent with the requirements of New York General Municipal Law § 50-e, Mr. AL-QADAFFI filed a timely Notice of Claim with the New York City Comptroller on or about April 9, 2014, within 90 days of the incident at issue in this litigation. Thus, this Court has supplemental jurisdiction over Mr. AL-QADAFFI's claims under New York law because they are so related to the within federal claims that they form part of the same case or controversy pursuant to 28 U.S.C. § 1367(a).

2

9.  Mr. AL-QADAFFI's claims have not been adjusted by the New York City Comptroller's Office.

10. An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. § 1988.

## PARTIES

11. Plaintiff WAJID KAHLIL AL-QADAFFI was at all times relevant to this action a resident of the County of Bronx in the State of New York.  He is a devout Muslim and a practicing member of the Nation of Islam.

    a.  Members of the Nation of Islam believe that Allah came to the United States in 1930 in the person of Fard Muhammad, and that Elijah Muhammad was Allah's messenger.

    b.  The Nation of Islam's theology and message address the need for freedom, justice, equality, economic self-sufficiency, dignity, security, and respect for all laws that do not conflict with Nation of Islam doctrine.

    c.  The Nation of Islam teaches adherents to be self-reliant, morally upright and obedient to civil authority.

    d.  The Nation of Islam shares many beliefs and practices with other sects of Islam. All Muslims, including Nation of Islam followers, are directed, *inter alia*, to observe Ramadan, obey the Qur'an and accept that Islam is based on "five pillars": declaration of faith, prayer, charity, fasting, and pilgrimage to Mecca.

    e.  Adherents of the Nation of Islam are directed, *inter alia*, to pray five times daily, facing east; to be clean-shaven; and, as relevant to this action, to proselytize.

12. Defendant THE CITY OF NEW YORK ("CITY") is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant CITY assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risks attach to the public consumers of the services provided by the NYPD.

13. Defendants NYPD Detective WILSON COLON (Shield No. 2933), NYPD Officer MAURICIO THOMAS (Shield No. 26957), and NYPD Officer JOHN DOE (referred to herein collectively as "officer-defendants") are and were at all times relevant herein, officers, employees and agents of the NYPD.

14. The full, true name, shield number and rank of defendant P.O. DOE are not currently known to Mr. AL-QADAFFI. However, P.O. DOE was an employee or agent of the NYPD on the day of the incident described below. Accordingly, P.O. DOE may be entitled to representation in this action by the New York City Law Department ("Law Department") upon their respective requests, pursuant to New York General Municipal Law § 50-k. The Law Department, then, is hereby put on notice (a) that Mr. AL-QADAFFI intends to name P.O. DOE as defendant in an amended pleading once their true names, ranks and shield numbers become known and (b) that the Law Department should immediately begin preparing their defenses in this action, if any.

15. The officer-defendants are being sued herein in their individual capacities.

16. At all times relevant herein, the officer-defendants were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees and officers of NYPD and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties. They were acting for and on behalf of the NYPD at all times relevant herein, with the power and authority vested in them as officers, agents and employees of the NYPD and incidental to the lawful pursuit of their duties as officers, employees and agents of the NYPD.

## STATEMENT OF FACTS

17. The incident here at issue occurred on April 2, 2014 at approximately 6:15 p.m. and thereafter in Bronx County.

18. As a member of the Nation of Islam, Mr. AL-QADAFFI is commanded to proselytize to members of the public about his faith. Indeed, the act of proselytizing is a central religious practice in the Nation of Islam, as it is with many other faith traditions.

19. At approximately the date and time above, in front of a bodega near the corner of Prospect Avenue and Freeman Street in the Bronx, Mr. AL-QADAFFI was setting up a display of literature and other media promoting the message of the Nation of Islam.

20. Mr. AL-QADAFFI was intending to distribute the Nation of Islam's newspaper, *Muhammad Speaks*, along with DVDs and compact discs ("CDs") to interested passersby and members of the public.

21. In fact, on the date of the incident described herein, Mr. AL-QADAFFI was the Regional Editor for *Muhammad Speaks*.

22. While setting up the display of religious literature, P.O. DOE approached Mr. AL-QADAFFI and ordered him to stop setting up the display and to leave the area.

23. Mr. AL-QADAFFI complied with the order even though he believed the order violated his First Amendment right to practice his religion.

24. Accordingly, Mr. AL-QADAFFI gathered his belongings and moved to the sidewalk in front of 1335 Prospect Avenue, a couple of blocks away, and began setting up his display of religious literature and media.

25. While peacefully proselytizing to willing passersby (as he had done on several occasions in previous weeks near that location), Mr. AL-QADAFFI saw two uniformed NYPD officers

across the street yell to two young, Black men to stop. The young men were carrying Styrofoam drink cups in their hands, and, upon information and belief, the officers stopped the young men upon the speculation that the cups may have contained alcohol.

26. Several minutes later, additional NYPD officers arrived on the scene.

27. The police officers detained the young men.

28. One of the officers yelled at one of the young men and pointed his finger into the young man's chest.

29. Upon seeing the encounter appear to escalate, Mr. AL-QADAFFI took out his cell phone and started to record a video of the police stop occurring across the street from him.

30. Soon after Mr. AL-QADAFFI began filming, a police vehicle driven by Det. COLON, with P.O. THOMAS in the passenger seat, drove across traffic and stopped in the general vicinity of Mr. AL-QADAFFI.

31. Det. COLON and P.O. THOMAS approached Mr. AL-QADAFFI, and Det. COLON ordered Mr. AL-QADAFFI to stop filming.

32. Mr. AL-QADAFFI asked Det. COLON why he was being ordered to stop filming.

33. In response, Det. COLON said, in sum and substance, "TURN IT OFF AND I'LL TELL YOU."

34. Mr. AL-QADAFFI then stopped filming the encounter.

35. Det. COLON told P.O. THOMAS, in sum and substance, "SEARCH HIM."

36. Det. COLON also informed Mr. AL-QADAFFI, in sum and substance, that he would be formally arrested if he tried to leave the area.

37. Prior to searching Mr. AL-QADAFFI, and without Mr. AL-QADAFFI's consent, P.O. THOMAS grabbed the cell phone out of Mr. AL-QADAFFI's hand.

38. Having neutralized the perceived threat posed by Mr. AL-QADAFFI's cameraphone, and without Mr. AL-QADAFFI's consent, P.O. THOMAS conducted an invasive frisk of Mr. AL-QADAFFI's person, including the interior of his pockets.

39. P.O. THOMAS then removed Mr. AL-QADAFFI's wallet from Mr. AL-QADAFFI's pocket and took out the identification, which he then handed to Det. COLON.

40. No contraband was recovered from Mr. AL-QADAFFI's person.

41. At some point during this encounter, Det. COLON looked at the items Mr. AL-QADAFFI was distributing and, upon information and belief, understood the materials to be religious in nature, apparently causing Det. COLON to (inaccurately) exclaim, in sum and substance, "YOU'RE RECORDING *US* AND SELLING *THIS* SHIT?"

42. At no point was Mr. AL-QADAFFI selling any of the religious materials.

43. Det. COLON then picked up some of the religious CDs/DVDs and threw them against the side of a nearby building, breaking several of the cases and the CDs/DVDs inside them.

44. Upon information and belief, Det. COLON took Mr. AL-QADAFFI's identification and confirmed that Mr. AL-QADAFFI did not have any open warrants.

45. After learning Mr. AL-QADAFFI did not have any warrants, Det. COLON entered a nearby restaurant and, upon information and belief, attempted to coerce the employees into saying that Mr. AL-QADAFFI had refused their request to leave the area.

46. Upon information and belief, the employees told Det. COLON that they had never asked Mr. AL-QADAFFI to leave.[1]

47. Nevertheless, the officer-defendants continued to detain Mr. AL-QADAFFI on the sidewalk and repeatedly denied Mr. AL-QADAFFI's requests that he be permitted to leave.

---

[1] Of course, even if employees at Kennedy Fried Chicken had asked Mr. AL-QADAFFI to leave the public sidewalk, he would have been under no legal obligation to do so.

48. Eventually, Det. COLON stated, in sum and substance, "I'M TIRED OF THIS SHIT. PACK IT UP AND GET OUT OF HERE. OR I'M GOING TO ARREST YOU AND CONFISCATE YOUR SHIT. AND WE'LL SEE HOW THE BROTHERS AT RIKERS TREAT YOU."

49. Upon information and belief, Det. COLON's reference to possible treatment at Rikers Island was a threat of inmate-on-inmate assault, including sexual assault.

50. Intensely fearing that he might, in fact, be sent to Rikers Island, Mr. AL-QADAFFI complied with Det. COLON's unlawful order, gathered his belongings, and left the area.

51. In total, Mr. AL-QADAFFI was detained for slightly less than an hour.

52. As a result of this retaliatory detention, Mr. AL-QADAFFI was deprived of his liberty and suffered profound emotional harms.

53. Further, as a result of the defendant-officers' conduct described above, Mr. AL-QADAFFI has stopped proselytizing for fear that he might be arrested or otherwise harassed by members of the NYPD. This legitimate, paralyzing fear of retaliation has undermined Mr. AL-QADAFFI's faith, destroyed part of his self-identity, and placed his spirituality in jeopardy – all causing deep emotional distress.

**FIRST CLAIM**
**DEPRIVATION OF RIGHTS**
**UNDER THE UNITED STATES CONSTITUTION THROUGH 42 U.S.C. § 1983**
(*Against the officer-defendants*)

54. Mr. AL-QADAFFI incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

55. By the officer-defendants' conduct and actions in seizing Mr. AL-QADAFFI in retaliation for protected activity (namely, filming police conduct occurring in public spaces and proselytizing to members of the public), by detaining him without reasonable suspicion or

probable cause and for continuing that detention far longer than necessary to accomplish any legitimate law enforcement objectives (of which there were none), by conducting an invasive frisk of his person and the interior of his pockets, by destroying his property that he intended to use in proselytizing to the public, and by the other acts described above, the officer-defendants, while acting under color of state law, deprived Mr. AL-QADAFFI of his rights, privileges and immunities secured by the First, Fourth and Fourteenth Amendments to the United States Constitution, including without limitation deprivation of the following constitutional rights:

    a) freedom from interference with the free exercise of his religious duties and beliefs (against all officer-defendants),

    b) freedom from interference with his freedom of speech, including but not limited to his right to film police conduct in public spaces (against Det. COLON and P.O. THOMAS),

    c) freedom from retaliatory arrest/seizure (against Det. COLON and P.O. THOMAS),

    d) freedom from unreasonable seizure of his person and property, including but not limited to the suspicionless detention of his person, subsequent search of his person and property, and subsequent destruction of some of his property (against Det. COLON and P.O. THOMAS), and

    e) freedom from denial of equal protection under the law (against all officer-defendants).

56. As a result of the foregoing, Mr. AL-QADAFFI was deprived of his liberty, suffered profound emotional distress, humiliation, loss of property, has been chilled from the free exercise of his First Amendment rights, and was otherwise damaged and injured.

**SECOND CLAIM**
**DEPRIVATION OF RIGHTS**
**UNDER THE UNITED STATES CONSTITUTION THROUGH 42 U.S.C. § 1983**
(*Against the CITY OF NEW YORK*)

57. Mr. AL-QADAFFI incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

58. The officer-defendants' acts and omissions described above were carried out pursuant to the CITY's overlapping customs and practices which were in existence on April 2, 2014 and were engaged in with the full knowledge, consent, and cooperation and under the supervisory authority of the CITY and its agency, the NYPD.

59. The acts complained of were carried out by the officer-defendants in their capacities as police officials pursuant to customs, policies, usages, practices, procedures and rules of the CITY and the NYPD, all under the supervision of ranking officers of the NYPD.

60. The aforementioned custom and practice of the CITY and the NYPD include, but are not limited to making retaliatory arrests and detaining persons who lawfully photograph, document or record police activity occurring in public spaces.

61. The existence of aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct, as set forth below:

a. **May 30, 2007 / Robert Carneval / <u>Carneval v. City of New York</u>, 08 CV 9993 (DAB)(AJP)(S.D.N.Y.)**
A Manhattan photographer, Robert Carneval, was arrested after filming NYPD officers in the East Village as they seized and loaded bikes, which had been locked to lampposts and parking meters, into a police van. After the photographer began filming and discussing the removals with another man, a plainclothes officer asked him for identification. When the photographer stated he had the right to film, the officer led him to a police car, examined his ID, then arrested him. Colin Moynihan, *City Settles with Two Arrested After Police Confrontation*, The New York Times (March 31, 2010), http://cityroom.blogs.nytimes.com/2010/03/31/city-settles-with-pair-arrested-after-police-confrontation/.

b. **November 2011 / Karen Matthews, Seth Wenig, Matthew Lysiak, Patrick Hedlund, Paul Lomax and Julie Walker**
In November of 2011, at least six journalists were arrested while covering the raid and eviction of Occupy Wall Street protesters from Zuccotti Park. Thirteen news organizations in New York City lodged complaints about the treatment of journalists and the suppression of coverage of the event, and ten press clubs, unions, and other groups called for an investigation into the police conduct at issue. CBS New York / AP, *Several Journalists Among Those Arrested During Zuccotti Park* Raid, CBS New York (November 15, 2011) http://newyork.cbslocal.com/2011/11/15/officials-journalists-among-those-arrested-during-zuccotti-park-raid/; Brian Stelter, *News Organizations Complain About Treatment During Protests*, The New York Times: Media Decoder (November 21, 2011) http://mediadecoder.blogs.nytimes.com/2011/11/21/news-organizations-complain-about-treatment-during-protests/.

c. **November 15, 2011 / Timothy Fitzgerald / <u>Rodriguez v. Winski</u>, 12 CV 3389 (NRB) (S.D.N.Y.)**
On or about November 15, 2011, in Zucotti Park, a publicly accessible open space, several police officers grabbed Timothy Fitzgerald, a citizen reporter who was documenting protest activities and police response to same, pulled him to the ground and arrested him.

d. **August 4, 2012 / Robert Stolarik**
Photographer Robert Stolarik, who worked regularly for The New York Times for more than a decade, was charged with obstructing government administration and resisting arrest after taking photographs of a brewing street fight at McClellan Street and Sheridan Avenue in the Bronx. Mr. Stolarik was taking photographs of the arrest of a teenage girl about 10:30 p.m., when a police officer instructed him to stop doing so. Mr. Stolarik said he identified himself as a journalist for The New York Times and continued taking pictures. A second officer appeared, grabbed his camera and "slammed" it into his face, he said. The arresting officer was later indicted for falsifying statements surrounding Ms. Stolarik's arrest. Russ Buettner, *Officer Is Indicted on Charges of Lying About Photographer's Arrest,* The New York Times (Aug. 26, 2013), http://www.nytimes.com/2013/08/27/nyregion/officer-is-indicted-on-charges-of-lying-about-photographers-arrest.html.

e. **September 17, 2012 / Christopher Faraone / <u>Faraone v. City of New York et al</u>, 13 CV 09074 (TPG) (S.D.N.Y.)**
Christopher Faraone, a journalist, was photographing a public demonstration at One Chase Manhattan Plaza when NYPD officers tackled, battered and arrested him. One of the officers directed him to cease his reporting activities within New York City.

f. **September 15-17, 2012 / Julia Reinhart, Charles Meacham and John Knefel**
Five photojournalists reporting on Occupy Wall Street protesters were arrested in course of their reporting. One photographer was arrested after attempting to take a picture of an officer giving a dispersal order on a sidewalk. Another was forced to the

ground and detained, while another was shoved and blocked from taking a photo by a Lieutenant in the NYPD's Legal Bureau. Christopher Robbins, *NYPD's pattern of harassing, arresting journalists continues*, Gothamist (Sept. 19, 2012) http://gothamist.com/2012/09/19/nypds_harassment_of_journalists_con.php.

g. **December 12, 2011 & March 15, 2012 / Paul Sullivan, John Knefel and Justin Wedes / <u>Rodriguez v. Winski</u>, 12 CV 3389 (NRB) (S.D.N.Y.)**
On December 12, 2011, Paul Sullivan, John Knefel and Justin Wedes, citizen reporters who were documenting protest activities and police response to same at the Winter Garden, a publicly accessible open place, were grabbed, pulled to the ground and arrested without warning or probable cause by the NYPD. On March 15, 2012, Mr. Wedes was again threatened with arrest for the same legal activity.

h. **March 2012 / Unknown**
In March of 2012, a cameraman from WABC-TV was struck by an officer at crime scene for unknown reasons. Carlos Miller, *NYPD Cop Assaults News Videographer At Crime Scene*, Photography Is Not A Crime (March 22, 2012) http://photographyisnotacrime.com/2012/03/22/nypd-cop-assaults-news-videographer-at-crime-scene/

i. **November 27, 2012 / Angel Zayas / <u>Zayas v. Kelly</u>, 13 CV 08808 (JMF) (S.D.N.Y.)**
On November 27, 2012, a freelance photographer, Angel Zayas, was arrested for photographing officers effect an unrelated arrest in Grand Central Terminal. Daniel Beekman, *Photographer trying to shoot stop and frisk sues NYC over police harassment*, New York Daily News (December 13, 2013) http://www.nydailynews.com/news/justice-story/photog-shooting-frisking-sues-nyc-harassment-article-1.1546548

j. **January 16, 2013 / Shimon Gifter**
A photographer from VIN News, a media outlet for the Orthodox Jewish community, had his camera seized and thrown to the ground, his memory card erased, and his Blackberry damaged after photographing officers stopping and frisking several young men. The photographer was also handcuffed and held up against a wall before being released with a warning. Boruch Shubert, *Police Brutality in Midwood?*, The Jewish Voice (January 24, 2013) http://jewishvoiceny.com/index.php?option=com_content&view=article&id=2978:police-brutality-in-midwood&catid=106:international&Itemid=289; Sandy Eller, *Charedi Photographer Claims Handcuffed By NYPD After Videotaping Flatbush Police Stop*, Voz Iz Neias? (January 20, 2013). http://www.vosizneias.com/122118/2013/01/20/brooklyn-ny-charedi-photographer-claims-handcuffed-by-nypd-after-videotaping-flatbush-police-stop/.

k. **April 19, 2013 / Justin Thomas / <u>Thomas v. City of New York</u>, 13 CV 6139 (SJ) (LB)(E.D.N.Y.)**
A film student was arrested filming the exterior of the 72nd Precinct on April 19, 2013. Officers confiscated the student's cell phone, camera, and the camera's memory card, as well as his friend's memory card from a camera.  Officers failed to remove the correct memory card from the friend's camera, however, leaving evidence of the encounter.

l. **February 9, 2005 / Lumumba Bandele, Djibril Toure and David Floyd / <u>Bandele v. The City of New York</u>, 07 CV 3339 (MGC)(S.D.N.Y.)**
Lumumba Bandele, Djibril Toure and David Floyd were arrested while videotaping two arrests in Bedford-Stuyvesant, Brooklyn, on February 9, 2005. "In trying to stop the police from violating the rights of others, they had their rights violated," said Kamau Franklin, a lawyer with the Center for Constitutional Rights. *Metro Briefing: New York; Manhattan: Lawsuit Against The Police*, The New York Times (April 27, 2007),
http://query.nytimes.com/gst/fullpage.html?res=9C02E2DD123EF934A15757C0A96 19C8B63.

m. **September 29, 2009 / Dennis Flores / <u>Mesa v. City of New York</u>, 09 CV 10464 (JPO) (S.D.N.Y.)**
On September 29, 2009, Dennis Flores was arrested when he photographed NYPD officers using excessive force to disperse a crowd at a festival in the Bronx. At one point prior to Flores' arrest, an NYPD officer stated it was "illegal to photograph police."

n. **October 17, 2010 / Anibal Ortiz / <u>Ortiz v. City of New York</u>, 11 CV 7919 (JMF) (S.D.N.Y.)**
On October 17, 2010, Anibal Ortiz was arrested after he began recording NYPD officers, who asked him for identification, with a cell phone camera.

o. **July 11, 2011 / Caroline Stern and George Hess / <u>Stern v. City of New York</u>, 12 CV 04863 (SAS) (S.D.N.Y)**
On July 11, 2011, Caroline Stern was arrested and her boyfriend George Hess, was tackled and arrested after he began video recording an encounter with officers in a subway station. Kathianne Boniello, *Couple handcuffed, jailed for dancing on subway platform: lawsuit*, The New York Post (July 8, 2012) http://nypost.com/2012/07/08/couple-handcuffed-jailed-for        -dancing-on-subway-platform-lawsuit/

p. **April 27, 2012 / John Runnells / <u>Runnells v. City of New York</u>, 13 CV 2904 (KBF) (S.D.N.Y.)**
On April 27, 2012, John Runnells' camera was seized and its footage erased after he video recorded a police traffic checkpoint. Mr. Runnells continued recording the officers after his camera was returned, and he was subsequently arrested. Once again, his camera was seized and the footage deleted.

q. **June 5, 2012 / Hadiyah Charles / <u>Charles v. City Of New York</u>, 12 CV 06180 (SLT) (SMG) (E.D.N.Y)**
On June 5, 2012 a woman was pushed and arrested for using her phone to video record the stop-and-frisk of three unrelated young men on a public sidewalk. Rocco Parascandola, *Woman suing NYPD for wrongful arrest discovers that a key piece of evidence has mysteriously vanished from the Brooklyn stationhouse*, New York Daily News (October 17, 2013) http://www.nydailynews.com/new-york/brooklyn/brooklyn-precinct-log-book-mystery-article-1.1487721

r. **August 2012 / Unknown**
In August of 2012, a man was threatened with arrest for filming outside about 300 feet away from the security checkpoint at One Police Plaza. Carlos Miller, *NYPD Cop Fails at Intimidating Man From Video Recording Police Headquarters*, Photography Is Not A Crime (August 17, 2012) http://photographyisnotacrime.com/2012/08/17/nypd-cop-  fails-at-intimidating-man-from-video- recording-police-headquarters/

s. **January 10, 2012 / Justin Sullivan / <u>Rodriguez v. Winski</u>, 12 CV 3389 (NRB)**
On January 10, 2012, Justin Sullivan was arrested for filming an Occupy Wall Street protest at Grand Central Terminal and his camera was confiscated. Later, Mr. Sullivan returned to the police precinct at the terminal to retrieve his camera and he was re-arrested. A witness reported an officer destroyed Mr. Sullivan's camera.

t. **March 2012 / Unknown**
In March of 2012, an individual video recording officers beating another man with batons was told to leave the scene and threatened with pepper spray.
Carlos Miller, *NYPD Takes Break From Beating Man To Threaten Videographer With Pepper Spray* (March 18, 2012)
http://photographyisnotacrime.com/2012/03/18/nypd-takes-break-from-beating-man-to-threaten-videographer-with-pepper-spray/.

u. **March 13, 2013 / Ed Garcia Conde**
Ed Carcia Conde was arrested on March 13, 2013 after he used his phone to video record a police officer's interaction with another man.  Ben Yakas, *Video: Bronx Man Hauled To Jail For Exercising Right To Videotape Cops*, Gothamist (March 16, 2013) http://gothamist.com/2013/03/16/video_bronx_man_hauled_to_jail_for.php.

v. **May 16, 2013 / Christina Gonzalez and Matthew Swaye**
Two Harlem residents were arrested after they filmed NYPD officers conduct stop-and-frisks at a car checkpoint. Christina Gonzalez and Matthew Swaye said they were returning from a Bronx mall at about 10:30 p.m. when they noticed several vehicles stopped and Gonzalez took out her camera to begin filming.  Jeff Mays, *'Professional Agitators' on NYPD 'Wanted' Flier Arrested After Filming Stop*, DNA Info (May 21, 2013),      http://www.dnainfo.com/new-york/20130521/central-harlem/professional-agitators-on-nypd-wanted-flier-arrested-after-filming-stop.

w. **August 26, 2013 / Jonathan Harris**
NYPD officers arrested a Bronx teenager, Jonathan Harris, after he was filming the officers attack and threaten two young girls in a Bronx park. The teenager told the officers to leave the girls alone and began filming them with his phone. The officers began chasing him, tackled him and punched him before arresting him. Jennifer Cunningham, *Teens say they were beaten by cops in Bronx park*, New York Daily News (Aug. 29, 2013), http://www.nydailynews.com/new-york/bronx/teens-mauled-cops-article-1.1440394#ixzz2eVh68jgw.

x. **September 19, 2013 / Sean Basinski / <u>Basinski v. The City of New York</u>, 14 CV 1057 (LTS) (S.D.N.Y.)**
On September 19, 2013, a lawyer, Sean Basinski was arrested while using a phone to records police during a rally in front of Midtown North Precinct police station on West 54th Street. Colin Moynihan, *Street Vendors Protest Treatment by Police*, The New York Times (October 2, 2013), http://www.nytimes.com/2013/10/03/nyregion/street-vendors-protest-treatment-by-police.html?_r=0.

y. **September 28, 2013 / Santos Bobet / <u>Bobet v. The City of New York</u>, 14 CV 1396 (WHP)(JLC) (S.D.N.Y)**
On September 28, 2013, at approximately 8:55 p.m., Santos Bobet observed someone being arrested near the Whitlock Avenue 6 Station in the Bronx. After beginning to videotape the arrest, he was arrested by Officer Kelvin Prado, who then along with his partner deleted the video footage

z. **October 11, 2013 / Bina Ahmad**
On October 11, 2013, a public defender, Bina Ahmad, was arrested for photographing the arrest of two men at the Kingston-Throop Subway station in Brooklyn. The charge against her was dismissed at arraignment.

aa. **February 22, 2014 / Jeronimo Maradiaga, Cosme Del Rosario-Bell, Kevin Park and Randolph Carr**
On February 22, 2014, four young men, Jeronimo Maradiaga, Cosme Del Rosario-Bell, Kevin Park and Randolph Carr, who are part of Harlem Copwatch were arrested for videotaping a vehicular checkpoint set up on the 145th Street Bridge between Manhattan and the Bronx.

62. All of the foregoing acts by defendants deprived Mr. AL-QADAFFI of federally protected rights, including, but limited to, the constitutional rights enumerated in paragraph 55.

63. Defendant CITY knew or should have known that the acts alleged herein would deprive Mr. AL-QADAFFI of his rights, in violation of the First, Fourth, and Fourteenth Amendments to the United States Constitution.

64. Defendant CITY is directly liable and responsible for the acts of the officer-defendants because it repeatedly and knowingly failed to properly supervise, train, instruct, and discipline them and because it repeatedly and knowingly failed to enforce the rules and regulation of the CITY and NYPD, and to require compliance with the Constitution and laws of the United States.

65. Despite knowledge of such unlawful de facto policies, practices and/or customs, these supervisory and policy-making officers and officials of the NYPD and the CITY, including NYPD Commissioner William Bratton and former NYPD Commissioner Raymond Kelly, have not taken and did not take steps to terminate these policies, practices and/or customs, do not and did not discipline individuals who engage(d) in such polices, practices and/or customs, or otherwise properly train police officers with regard to the constitutional and statutory limits on the exercise of their authority, and instead sanction(ed) and ratify / ratified these policies, practices and/or customs through their active encouragement of, deliberate indifference to and/or reckless disregard of the effect of said policies, practices and/or customs upon the constitutional rights of persons in the City of New York.

66. The aforementioned CITY policies, practices and/or customs of failing to supervise, train, instruct and discipline police officers and encouraging their misconduct are evidenced by the police misconduct detailed herein. Specifically, pursuant to the aforementioned CITY policies, practices and/or customs, the officer-defendants felt empowered to order Mr. AL-QADAFFI to stop filming police activity occurring in public, detain Mr. AL-QADAFFI, and interrogate and denigrate plaintiff for the exercise of his constitutional right to film matters of public interest and exercise his religious duties and beliefs.

67. Mr. AL-QADAFFI's injuries were a direct and proximate result of defendant CITY and the NYPD's wrongful *de facto* policies and/or well-settled and widespread customs and practices and of the knowing and repeated failure of the defendant CITY and the NYPD to properly supervise, train and discipline their police officers.

**THIRD CLAIM**
**ASSAULT AND BATTERY**
**UNDER THE LAWS OF THE STATE OF NEW YORK**
(*Against Det. COLON, P.O. THOMAS, and THE CITY OF NEW YORK*)

68. Mr. AL-QADAFFI incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

69. By the actions described above, Det. COLON and P.O. THOMAS did inflict assault and battery upon Mr. AL-QADAFFI. The acts and conduct of Det. COLON and P.O. THOMAS were the direct and proximate cause of injury and damage to Mr. AL-QADAFFI and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

70. The conduct of Det. COLON and P.O. THOMAS alleged herein occurred while they were on duty and in uniform, and/or in and during the course and scope of their duties and functions as NYPD officers, and/or while they were acting as agents and employees of defendant CITY, clothed with and/or invoking state power and/or authority, and, as a result, defendant CITY is liable to Mr. AL-QADAFFI pursuant to the state common law doctrine of *respondeat superior.*

71. As a result of the foregoing, Mr. AL-QADAFFI was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and was otherwise damaged and injured.

**FOURTH CLAIM**
**FALSE ARREST**
**UNDER THE LAWS OF THE STATE OF NEW YORK**
(*Against Det. COLON, P.O. THOMAS, and THE CITY OF NEW YORK*)

72. Mr. AL-QADAFFI incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

73. By the actions described above, Det. COLON and P.O. THOMAS caused to be falsely arrested or falsely arrested Mr. AL-QADAFFI, without reasonable suspicion or probable cause, illegally and without a warrant, and without any right or authority to do so. The acts and conduct of Det. COLON and P.O. THOMAS were the direct and proximate cause of injury and damage to Mr. AL-QADAFFI and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

74. The conduct of Det. COLON and P.O. THOMAS alleged herein occurred while they were on duty and in uniform, and/or in and during the course and scope of their duties and functions as NYPD officers, and/or while they were acting as agents and employees of defendant CITY, clothed with and/or invoking state power and/or authority, and, as a result, defendant CITY is liable to Mr. AL-QADAFFI pursuant to the state common law doctrine of *respondeat superior*.

75. As a result of the foregoing, Mr. AL-QADAFFI was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and was otherwise damaged and injured.

### FIFTH CLAIM
### TRESPASS TO CHATTELS
### UNDER THE LAWS OF THE STATE OF NEW YORK
(*Against Det. COLON, P.O. THOMAS, and THE CITY OF NEW YORK*)

76. Mr. AL-QADAFFI incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

77. Det. COLON and P.O. THOMAS physically seized and searched through Mr. AL-QADAFFI's personal belongings without his consent, thereby interfering with Mr. AL-QADAFFI's right of possession and preventing him from exercising his constitutional right to film the police from a safe distance and exercise his religious beliefs.

78. The conduct of Det. COLON and P.O. THOMAS alleged herein occurred while they were on duty and in uniform, and/or in and during the course and scope of their duties and functions as NYPD officers, and/or while they were acting as agents and employees of defendant CITY, clothed with and/or invoking state power and/or authority, and, as a result, defendant CITY is liable to Mr. AL-QADAFFI pursuant to the state common law doctrine of *respondeat superior*.

79. The defendants' deprivations of Mr. AL-QADAFFI's rights resulted in the injuries and damages set forth above.

### SIXTH CLAIM
### CONVERSION
### UNDER THE LAWS OF THE STATE OF NEW YORK
(*Against Det. COLON and THE CITY OF NEW YORK*)

80. Mr. AL-QADAFFI incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

81. Det. COLON seized Mr. AL-QADAFFI's religious literature and media and completely destroyed some of the items, thereby interfering with Mr. AL-QADAFFI's right of

possession and preventing him from exercising his constitutional right to exercise his religious beliefs.

82. The conduct of Det. COLON alleged herein occurred while he was on duty and in uniform, and/or in and during the course and scope of his duties and functions as NYPD officer, and/or while he was acting as agent and employee of defendant CITY, clothed with and/or invoking state power and/or authority, and, as a result, defendant CITY is liable to the Mr. AL-QADAFFI pursuant to the state common law doctrine of *respondeat superior*.

83. The defendants' deprivations of Mr. AL-QADAFFI's rights resulted in the injuries and damages set forth above.

## SEVENTH CLAIM
## INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
## UNDER THE LAWS OF THE STATE OF NEW YORK
### (*Against all defendants*)

84. Mr. AL-QADAFFI incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

85. By the actions described above, the officer-defendants engaged in extreme and outrageous conduct, which intentionally and/or negligently caused severe emotional distress to Mr. AL-QADAFFI. The acts and conduct of the officer-defendants were the direct and proximate cause of injury and damage to Mr. AL-QADAFFI and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

86. The conduct of the officer-defendants alleged herein occurred while they were on duty and in uniform, and/or in and during the course and scope of their duties and functions as NYPD officers, and/or while they were acting as agents and employees of defendant CITY, clothed with and/or invoking state power and/or authority, and, as a result, defendant CITY is liable to plaintiff pursuant to the state common law doctrine of *respondeat superior*.

87. The defendants' deprivations of Mr. AL-QADAFFI's rights resulted in the injuries and damages set forth above.

## JURY DEMAND

88. Mr. AL-QADAFFI demands a trial by jury in this action on each and every one of his damage claims.

*WHEREFORE*, Mr. AL-QADAFFI demands judgment against the defendants individually and jointly and prays for relief as follows:

a.     That he be compensated for violation of his constitutional and statutory rights, pain, suffering, mental anguish, and humiliation; and

b.     That he be awarded punitive damages against the officer-defendants; and

c.     That he be compensated for attorneys' fees and the costs and disbursements of this action; and

d.     For such other further and different relief as to the Court may seem just and proper.

Dated:          New York, New York
                May 7, 2015

                                          Respectfully submitted,

                                          /s/
                            By:     _____
                                    Robert M. Quackenbush
                                    Rankin & Taylor, PLLC
                                    *Attorneys for the Plaintiff*
                                    11 Park Place, Suite 914
                                    New York, New York 1007
                                    t: 212-226-4507
                                    f: 212-658-9480
                                    e: robert@drmtlaw.com